JOHNSON, Judge.
This derivative action was brought, by ten plaintiffs on their own behalf and on behalf of United Most Worshipful St. John’s Grand Lodge of Ancient Free and Accepted Masons for the State of Louisiana (hereinafter called the Grand Lodge), a non-profit corporation, against fifteen members who are the Grand Board of Directors of the corporation, seeking a judgment in favor of the corporation for a sum of money and to have said Grand Board of Directors removed from office. The trial court rendered judgment in favor of the corporation and against the Grand Board of Directors in the sum of $8,700.00, but denied the demand in all other respects. A suspensive appeal was granted to the corporation and to the Grand Board of Directors.
This action was filed January 10, 1957. The petition of plaintiffs, after making all necessary qualifying allegations, alleges that the Grand Lodge was organized and incorporated for the purpose, as stated in the charter “ * * * to aid and assist its sick and distressed members and to bury the dead and to provide death benefits, and to propagate the sublime purposes of Free Masonry, and to that end to organize local or subordinate lodges or branches of this Association under- this general charter * * that monies are collected by the Grand Lodge in the form of dues and- assessments for the purpose of providing sick and death benefits for the membership of the Grand Lodge; that the Grand Board of Directors at different times made a loan to A. R. Turner, the Grand Master, for his personal use, in the sum of $5,000.00 and donations to Turner of $3,200.00 and $500.00, all out of the treasury of the Grand Lodge; that the acts of the Grand Board of Directors were improper and illegal, ultra vires, without legal power or authority and constituted gross abuse of authority or discretion, for which they should be held personally liable and be removed from office.
The answer of the defendants admits that each of, said amounts was paid to the said A. R. Turner and the answer explains that *208 the $5,000.00 was a loan for which the said A. R. Turner executed his personal unsecured note repayable at 3% interest at the rate of $35.00 per month; that the purpose of the loan was to assist the Grand Master in the purchase of a home for himself so that he would have a residence in keeping with his position as Grand Master and suitable for the entertainment of officers and members of the Grand Lodge and of the Supreme Council of the General Grand Masonic Congress; that $3,200.00 was given to the Grand Master to buy an automobile to replace his 1947 Buick to be used in travelling over the state to visit the Lodges, and that $500.00 was given the said Turner as a bonus for finding and prevailing on the Grand Lodge to buy a building for a home for the Grand Lodge.
The judgment was signed on May 6th,, 1957, and a corrected judgment was signed on May 17. On motion of counsel for the defendants and for the Grand Lodge, an order of appeal was granted on May 20, 1957. The transcript of appeal was filed in the Supreme Court on June 20, 1957. The transcript was transferred to this court by law on July 1, 1960. The defendant members of the Grand Board of Directors and the Grand Lodge were represented in the trial court and in this court by the same attorney. Counsel for plaintiffs-appellees, formerly of Alexandria, La., moved to Los Angeles, California, and on August 24, 1961, he filed in this court a motion to withdraw as counsel for plaintiffs for the reason that he no longer represented them and requested that all subsequent notices in this matter be sent to Freddie J. Spears, one of the plaintiffs, at Alexandria, Louisiana. After one assignment for April 11, 1961, the case was reassigned for October 24, 1961. Notice by registered mail was sent to said Spears on October-20, 1961, notifying him that the case would be continued en October 24 and reassigned by preference. The case was reassigned for argument in this court for January 3, 1962, and due notice given to Spears and to counsel for appellants. On that day no attorney appeared for the plaintiffs.
The chronology of the case as recited above is important, in view of the fact that on behalf of the defendant members of the Grand Board of Directors and on behalf of the Grand Lodge counsel for appellants presented on January 3, 1962, an exception of no right of action which he had previously filed in this court on October 9, 1961, alleging as follows:
“That the appellees-plaintiffs herein are no longer members of the United Most Worshipful St. John’s Grand Lodge. That their membership terminated on January 22, 1957, all as will appear from a notice of said corporation dated January 22, 1957, annexed hereto and made part hereof, and also as will appear from the certified copy of a judgment and reasons for judgment rendered in proceeding No. 354-030 of the docket of the Civil District Court for the Parish of Orleans, a copy of which is annexed and made part hereof.”
One of the documents attached to this exception is what purports to be a photostat of a communication dated January 22, 1957, addressed to “Worshipful Master and senior and junior wardens, Brethren of the Craft,” informing them that said Turner had suspended, on January 22, 1957, nine of the ten plaintiffs. (Plaintiff Andrew Ballot’s name was not included). The document states that these brethren are all members of lodges in Alexandria, La. That document is printed or typewritten and appears to have been signed in ink by A. R. Turner, Most Worshipful Grand Master. This document is marked “filed” on June 11, 1957, in case No. 354 — 030 of the Civil District Court. The action now before us on appeal bears No. 350-865 of the Civil District Court.
In this case the transcript includes the original exhibits offered in evidence in the *209 trial court. Amongst these documents is a printed booklet entitled “Constitution and General Regulations,” of the Grand Lodge. It is marked filed April 4, 1957. We have examined this booklet. By article I, sec. 5, the power to suspend or expel lodges or members for violation of its statutes or regulations may be exercised by the Grand Lodge. In Article X of the regulations the Most Worshipful Grand Master is given the power to execute the orders of the Grand Lodge in the interim between Grand Lodge meetings, but we interpret that to mean that the Grand Lodge must have acted on a subject or issued an order at a previous meeting, presumably the last meeting. Nowhere do we find any authority given the Most Worshipful Grand Master, of his own accord, to suspend or expel members of subordinate lodges or of the Grand Lodge. Members of subordinate lodges according to the charter, constitution and regulations are likewise members of the Grand Lodge. By section 26 of article XIV of the regulations members can only be dropped (expelled) in open lodge by the Worshipful Master (of subordinate lodge) and due notice must be given thereof.
Moreover the ten plaintiffs allege in article 1 of their petition that they are members in good standing of subordinate lodges of the Grand Lodge, naming them. The answer of defendants, filed February 12, 1957, admits that allegation without qualification. In addition to that, on the trial of this case every one of these plaintiffs testified that they were members in good standing. This testimony went unquestioned. The pleadings are solemn judicial declarations and the answer of the defendants and the testimony completely estop these defendants from now taking a contrary position on this subject. That principle is so well established and recognized that it is unnecessary to cite the jurisprudence on it. We feel that it would serve no useful purpose to remand the case in order to permit the formal introduction in evidence of the documents attached to this exception of no right of action, or to take further evidence concerning those documents.
Attached also is a certified copy of a judgment rendered by the Civil District Court on June 1st and signed on June 8th, 1960, dismissing suit No. 354-030 together with a comment of the trial judge that that case was tried on May 26, 1960, and that the evidence showed that there had been proceedings for the Grand Lodge to reinstate these plaintiffs. Inasmuch as no mention of the subject was made on the trial of this case now-on appeal, whatever was done in the Grand Lodge about suspending these plaintiffs, if anything, had to be done after May 6, 1957, the date of the original judgment herein. Moreover the “suspension” of a member of itself, even if lawfully done, does not take away membership. The Grand Master had no authority to suspend or expel them. When judgment in this case was rendered in favor of the Grand Lodge on May 6, 1957, the interest of plaintiffs in this suit as plaintiffs ceased. They sought nothing for themselves. If these plaintiffs were members when the suit was filed and when judgment was rendered and the pleadings and evidence show that they were, they were no longer necessary parties to the suit after judgment was rendered. The very nature of a derivative action is that the judgment in this action belongs to the corporation and not to these plaintiffs. Even if these plaintiffs are not any longer members of the Grand Lodge, and the Grand Lodge does not see fit to execute the judgment, then any present member may enforce it. Kohler v. McClellan, D.C., 77 F.Supp. 308, Kohler v. Humphrey, 5 Cir., 174 F.2d 946. This Grand Lodge is a corporation and the law on this subject would apply to it exactly the same as if it were a business corporation.
Therefore the exception of no right of action is overruled.
Counsel’s argument is that the acts of the Grand Board of Directors complained of were ratified by the Grand *210 Lodge at subsequent annual meetings. The evidence discloses that the treasurer’s report was read by composite totals without any explanation of items or separate transactions. The trial court concluded that those members present when such a report was rendered, if it included the transactions complained of, were not sufficiently informed to constitute affirmative action that would result in ratification to estop all members from taking the action these plaintiffs now pursue. We agree with that conclusion.
Counsel makes the further argument that the charter of the corporation vests the Grand Board of Directors with “ * * full power and authority to buy and sell real estate and personal property, to borrow money and execute mortgages and/or pledges and create liens, to issue bonds, notes and other obligations and to secure same by mortgage and/or pledge or otherwise, and generally to do any and all things reasonable, convenient or necessary for the proper conduct of the business and affairs of this Corporation.”
There can be no question that general language following a recitation of specific powers shall be construed and confined within the limitation of the specific powers named. Lanahan v. Clark Car Co., 3 Cir., 11 F.2d 820; Grosjean v. American Paint Works, La.App., 160 So. 449; Boyd v. Hendrickson, 175 La. 377, 143 So. 332.
Certainly the loan of $5,000.00 to help the Grand Master own a better home to enable him to present a more dignified “front” in the entertainment of lodge members, the donation of $3,200.00 for a new automobile to facilitate the performance of his duties as Grand Master, and the gift $500.00 in recognition of the Grand Master’s outstanding business acumen and his guidance in the matter of the sale and purchase of property by the Grand Lodge all in some conceivable respect may have resulted in some benefit to the Grand Lodge as a whole, but actually these actions and such benefits, whatever they may be, do not flow from any specific power which the Grand Board of Directors had the legal right to exercise.
Counsel further states that the plaintiffs are guilty of laches of a nature to be construed as acquiescence. The Grand Board voted to buy the automobile at its meeting in 1953. Plaintiff, Howard Williams, was present as a member of the Board at that meeting and he opposed the resolution. The $500.00 was donated in 1955 and the loan of $5,000 was made in 1956. Williams reported these actions to his local lodge. This resulted in representatives of twelve local lodges holding a meeting and they decided to write the Grand Board a protest and request the recovery of the amounts. Nineteen members of various local lodges signed such a communication on September 26, 1956. They waited for some reply which never came. In view of the fact that local fraternal lodges were located over the state it would not be expected that the membership opposed to what the Grand Board had done would act with the same promptness as a closely knit business unit. In these circumstances we do not consider that the delay has defeated the right of plaintiffs to bring this action.
This case was tried on the merits and the trial judge gave written reasons for the court’s judgment. We take the liberty of adopting his reasons on the merits as our own, and quote them with approval as follows:
“Petitioners in this matter are members of the local Masonic Order which are affiliates of the UNITED MOST WORSHIPFUL ST. JOHN’S GRAND LODGE (Ancient, Free and Accepted Masons) for the State of Louisiana, Inc., and they bring this action on their own behalf and on behalf of the corporation, seeking a money judgment on behalf of the corporation against the members of the *211 Board of Directors of the Grand Lodge for three specific ultra vires actions of the Board, to-wit:
“1. In granting a $500.00 bonus or donation, on October 3, 1953, to A. R. Turner, one of the defendants, Grand Master and member of the Board of Directors;
“2. In purchasing with corporation funds an automobile for the price and sum of $3200.00, which automobile was placed in the name of A. R. Turner;
“3. In granting to A. R. Turner an unsecured loan in the sum of $5,000 for the purpose of providing a down payment on a house purchased in Turner’s name.
“Petitioners seek further judgment removing the defendants from the Board of Directors and barring them from any re-election for an indeterminate period.
“The record shows that the $500 bonus complained of was paid by the Board of Directors to A. R. Turner because he had made an advantageous transaction with reference to real estate in which no agent was employed and the board believed he should be remunerated in this amount over and above his salary of $250.00 per month.
“The record shows, with reference to the automobile, that the Board of Directors voted to buy Turner a Chrysler automobile because of the fact that he visited some 75 lodges throughout the State of Louisiana and that he used this automobile for the purpose of visiting these lodges on business of the corporation. Turner traded his personal car in on the Chrysler automobile and the Chrysler was placed in Turner’s name.
“The record shows, with reference to the house, that the Board of Directors voted to Turner a loan of $5,000, unsecured, to buy a house because, in their judgment, they believed their Grand Master needed a dwelling consistent with his position in order that he might entertain visiting dignitaries of the National Masonic Order, especially in view of the fact that the National Communication was to be held in the City of New Orleans.
“The charter and by-laws of the Masonic Order are to be found in the record, and under Article II the lodge is organized ‘to aid the sick and bury the dead, and to aid distressed members.’
“Under the Articles of Incorporation and By-laws, the only authority given to the board was to pay Turner’s railroad expenses, board and lodging, and $2.50 per diem while attending to the business of the lodge.
“This court is of the opinion that the actions of the Board of Directors were ultra vires with reference to paying the bonus to the Grand Master, with reference to the purchase of an automobile in the name of the Grand Master, and with reference to granting to the Grand Master a loan in the sum of $5,000.00 for a down payment on a house.
“Petitioners further ask the removal of all of these Directors under the provisions of [LSA-] R.S. 12:119, alleging that they were guilty of gross abuse of authority or discretion. The court, although of the opinion that the actions of the Directors were ultra vires, does not believe that their actions were such as to constitute gross abuse of discretion or authority, and will therefore refuse plaintiffs’ prayer and request that they be removed from office and barred from re-election.
“Defendants contend that because the financial statements rendered to the annual communication contained *212 the items complained of, the defendants who attended these communications ratified the actions complained of. In the opinion of the court such is not the case because, in order for such a defense to be valid, it must be shown that the transactions were clearly stated and understood by these parties who are said to have ratified them. The testimony in this record does not show that these transactions were brought up, discussed, or ratified at the annual communications, nor does it show that the members understood, from the financial statements, that they were ratifying the actions of the Board of Directors with reference to these ultra vires actions.”
The full amount of money given Turner by the Grand Lodge was $8,700.00 according to the evidence. Henderson Lewis, one of the defendants who is Grand Secretary, and who seemed to know a good deal about these transactions, testified at page 109 of the transcript that a total of $400.00 had been paid by Turner on his note of $5,000.00. There seems to be no dispute about that as copies of the receipts given Turner are in the record and neither Lewis nor any of the other defendants was questioned about these payments on cross examination. Therefore, the judgment will have to be reduced in the amount of the payments. There can be no doubt that the Grand Board of Directors was wholly without any authority whatsoever in making the loan of $5,000.00, or one gift of $3,200.00 and another of $500.00, and the judgment of the trial court in that respect is correct.
The evidence does not disclose any testimony which could be construed as an effort to remove them from office. It is definite that they used bad judgment and acted entirely without any authority to be found in the charter, constitution or regulations. It does appear that the Most Worshipful Grand Master received a very modest salary and devoted a great deal of time to his duties. If it is desired to compensate him adequately it must be done in a manner provided by their lodge laws and regulations. The prayer to remove the Grand Board of Directors does not seem to have been pressed seriously and we think the ruling of the trial judge in refusing to remove the defendants from office is correct.
The judgment appealed from is amended by reducing the amount of the award from $8700.00 to $8300.00, and, as amended, the judgment is affirmed. The individual defendants are to pay all costs.
Amended and affirmed.